Opinion issued October 16, 2009

 













In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00673-CV






CARL DOUG DYESS A/N/F A.V., MINOR, Appellant


V.


LEON HARRIS, DONNA L. HARRIS, AND SPAULDING FOR
CHILDREN, Appellees







On Appeal from the 234th District Court

Harris County, Texas

Trial Court Cause No. 2006-59465






O P I N I O N


 Appellant, Carl Doug Dyess, as next friend and guardian ad litem for A.V., a
minor child, (1) appeals from a traditional summary judgment rendered in favor of
A.V.'s foster parents, appellees, Donna L. and Leon Harris, and appellee, Spaulding
for Children, a non-profit agency that assisted in placing A.V. with the Harrises. The
Harrises were also foster parents of U.N., who sexually assaulted A.V. in the
Harrises' home. Dyess's single issue challenges the trial court's ruling that the
Harrises and Spaulding did not owe a duty to A.V. because the assault was not
foreseeable. We affirm. 

UNDERLYING FACTS AND PROCEDURAL HISTORY


A. Background

 When they became foster parents in 2002, the Harrises were approved to care
for from one to five children in foster care. After moving to a much larger home, they
obtained approval as a "group home" to care for a maximum of nine children. U.N.
was ten years old in 2002, when the Harrises became foster parents of him and his
younger brother. One of their first undertakings with U.N. was to care for him
through surgery to remove a tumor on his face. Over the four years in which U.N.
lived with the Harrises, they came to trust him and were planning to adopt him,
having already adopted another foster child. 

 U.N. did well at school, generally got along well with the Harrises and the
other foster children, and rarely got into trouble. Spaulding regularly monitored the
care of U.N. and his brother by the Harrises and on February 17, 2006 reported
positively on U.N.'s social, physical, and emotional needs while in their care. U.N.
continued to miss his birth family, with whom he had some contact, but his therapist
reported that U.N. was generally happy and continuing to remain positive in all areas. 
A Spaulding representative who visited the Harrises' home on April 6, 2006 reported
that U.N. and his brother "appeared to be doing great." 

 The Harrises became foster parents of A.V. and her brothers in January 2006. 
In April 2006, A.V. was six years old, and U.N. was 14 years old. On the evening of
April 8, 2008, Donna Harris was out of town to attend a funeral, and her husband was
in charge. When A.V. misbehaved in some respect, Leon Harris placed her in a six-minute "time out" upstairs in the group home. Before the six minutes had elapsed,
Leon heard a commotion and went upstairs to investigate. He saw U.N. running to
the door and saw A.V. in the corner of the room with her panties down. U.N. claimed
that he had found A.V. "like that" and was coming to summon Leon. U.N. denied
any contact with A.V., but she stated that he had attempted to have sexual contact
with her and had threatened to harm her if she told anyone. On the same evening, a
ten-year-old girl in foster care with the Harrises revealed for the first time that U.N.
had sexually assaulted her once before as well. It is undisputed that U.N. is in the
custody of the Texas Youth Commission as a result of the incident with A.V. 

B. This Lawsuit

 Dyess sued the Harrises and Spaulding in September 2006, claiming that their
negligent breach of duties owed to A.V. proximately caused the assault by U.N. and
resulted in damages that Dyess claimed on A.V.'s behalf. Dyess's live pleadings
against the Harrises included numerous instances of failure properly to care for, to
observe, to monitor, to supervise, and to ensure the safety of the children. His live
pleadings against Spaulding alleged numerous instances of failures to warn the
Harrises of U.N.'s prior history and his "true state," to investigate his background, to
implement measures that would have prevented the attack, and to properly and safely
place foster children. Dyess also claimed that Spaulding was vicariously liable for
the Harrises' negligence under agency and respondeat superior principles. 

 The Harrises and Spaulding answered by general denials and affirmative
defenses, including contentions that the criminal conduct of a third party (U.N.) had
proximately or solely and proximately caused A.V.'s injuries or, alternatively, that
any injuries had resulted from an intervening, superseding, or new and independent
cause that was not reasonably foreseeable. 

C. Motions for Summary Judgment and Dyess's Response

 The Harrises and Spaulding filed traditional and no-evidence motions for
summary judgment, in which they argued that the assault on A.V. was not foreseeable
as a matter of law, even if Texas law were to recognize a special relationship between
foster parents and a foster child, which neither the Legislature nor Texas case law has
yet recognized. 

 In response to the motions for summary judgment, Dyess claimed that U.N.'s
sexual assault on A.V. was foreseeable and, therefore, that the Harrises and Spaulding
had a duty to prevent it. Dyess also claimed that the foster-parent relationship
between U.N. and the Harrises constituted a "special relationship" that gave rise to
a duty to protect and to warn A.V. Dyess relied on deposition testimony and
discovery responses to support his contentions that the Harrises and Spaulding either
knew or should have known about U.N.'s tendencies and that the Harrises' primary
focus was not the foster children in their care, but the income they generated that
enabled the Harrises to pay for their new home. Dyess provided extensive
documentation regarding the Harrises' monthly financial obligations and the tax-free
income that they received as foster parents. 

 Dyess cited a number of factors to support his claims, including the number of
children in the home, whose ages varied from infants to 19, and the varying
ethnicities and behaviors of the children. Dyess also emphasized that the Harrises
conceded their lack of knowledge about the history of the children in their care,
though both denied that "their job" included inquiries into potential behavior
problems. Dyess further emphasized that the Harrises had recently permitted 14-year-old U.N. to stay upstairs in the group home, while other children generally remained
downstairs, and that the Harrises conceded that this decision was unwise in
retrospect. 

D. The Trial Court's Ruling

 In rendering summary judgment for the Harrises and Spaulding, the trial court
ruled that the summary judgment evidence on which Dyess relied, including U.N.'s
"personal and family history, and the foster family's living arrangements[,] where
children of mixed age, gender, and race living in the same home," did not establish
that the incident between U.N and A.V. was foreseeable. Indeed, the court stated that
the evidence fell "short of the facts of other cases" in which courts had rejected
foreseeability of an injury. Concluding that those cases constituted binding
precedent, the trial court granted the Harrises' and Spaulding's motions for traditional
summary judgment on "no duty" grounds. 

STANDARD OF REVIEW


 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). Like the trial court, we must indulge every
reasonable inference in favor of the nonmovant, here Dyess, take all evidence
favorable to him as true, and resolve any doubts in his favor. See id. We review the
evidence presented by the summary judgment record in the light most favorable to
Dyess, as the party against whom the summary judgment was rendered, and we credit
evidence that favors him if reasonable jurors could and disregard contrary evidence
unless reasonable jurors could not. See City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005). 

 As the parties moving for traditional summary judgment based on Rule of Civil
Procedure 166a(c), the Harrises and Spaulding had to establish that no genuine issue
of material fact existed and that they were entitled to judgment as a matter of law. 
See Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999). As defendants, they were entitled to prevail
either by conclusively negating at least one element of each of Dyess's causes of
action as a matter of law or by conclusively establishing all elements of an affirmative
defense as a matter of law. See Sanders v. Herold, 217 S.W.3d 11, 14 (Tex.
App.--Houston [1st Dist.] 2006, no pet.) (citing Randall's Food Mkts., Inc., v.
Johnson, 891 S.W.2d 640, 644 (Tex. 1995)). 

NEGLIGENCE


A. Elements

 To prevail on his claims that the negligence of the Harrises and Spaulding
caused U.N.'s sexual contact with A.V., Dyess had to establish all elements of a
negligence claim, specifically, that they owed a duty to A.V. to protect her from U.N.
and breached that duty, which proximately caused damages to her. See Kroger Co.
v. Elwood, 197 S.W.3d 793, 794 (Tex. 2006); Bird v. W.C.W., 868 S.W.2d 767, 769
(Tex. 1994); Madison v. Williamson, 241 S.W.3d 145, 152 (Tex. App.--Houston [1st
Dist.] 2007, pet. denied). 

B. Dispositive Principles of Duty Analysis

 As in any negligence case, the trial court's threshold inquiry was to determine
whether the Harrises or Spaulding owed A.V. a duty under the facts and
circumstances of the occurrence that gave rise to Dyess's claims on her behalf. See
Kroger Co., 197 S.W.3d at 794; Bird, 868 S.W.2d at 769; Madison, 241 S.W.3d at
152. When the facts are undisputed, the court determines duty as a matter of law. 
Sanders, 217 S.W.3d at 15; see Loram Maint. of Way, Inc. v. Ianni, 210 S.W.3d 593,
598 n.5 (Tex. 2006) ("[T]he existence of duty is a question of law for the court to
decide from the facts surrounding the occurrence in question.") (quoting Greater
Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990)). 

 1. General Rule: No Duty to Prevent Harm to Others

 Persons generally have no duty to control the conduct of third parties. Loram
Maint., 210 S.W.3d at 596; Tex. Home Mgmt., Inc. v. Peavy, 89 S.W.3d 30, 34 (Tex.
2002) (citing Greater Houston Transp. Co., 801 S.W.2d at 525); see Barton v.
Whataburger, Inc., 276 S.W.3d 456, 462 (Tex. App.--Houston [1st Dist.] 2008, pet.
filed) (stating rule in context of criminal conduct). Unless the danger to the claimant
is shown to be foreseeable, the conduct of the third party, including criminal conduct,
is deemed a superseding cause of the injury resulting from the danger. See Phan Son
Van v. Pena, 990 S.W.2d 751, 753 (Tex. 1999); Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 550 (Tex. 1985); Barton, 276 S.W.3d at 462. 

 An exception to this general rule applies when a special relationship exists
between an actor and another that imposes a duty on the actor to control the other's
conduct. See Tex. Home Mgmt., 89 S.W.3d at 34 (citing Greater Houston Transp.,
801 S.W.2d at 525). But even when a special relationship exists, courts will not
impose a duty unless the risk of harm is foreseeable, see id. at 36, because a person
has "'neither a legal nor [a] moral obligation to guard against that which cannot be
foreseen.'" Id. (quoting Houston Lighting & Power Co. v. Brooks, 336 S.W.2d 603,
606 (Tex. 1960) (quoting Tex. & P. Ry. Co. v. Bigham, 38 S.W. 162, 163 (Tex.
1896)); see also Carey v. Pure Distrib. Corp., 124 S.W.2d 847, 849 (Tex. 1939)
(stating that no liability will be imposed for allegation of negligence unless allegedly
negligent party "ought to have foreseen the consequences" of act in "light of the
attendant circumstances"). 

 2. Risk-Utility Inquiry Determines Duty 

 Settled law recognizes that when courts determine whether a duty exists, they
must "consider several interrelated factors, including the risk, foreseeability, and
likelihood of injury weighed against the social utility of the actor's conduct, the
magnitude of the burden of guarding against the injury, and the consequences of
placing the burden on the defendant." Madison, 241 S.W.3d at 152 (citing Mission
Petroleum Carriers, Inc. v. Solomon, 106 S.W.3d 705, 710 (Tex. 2003); Tex. Farm
Bureau Mut. Ins. Cos. v. Sears, 84 S.W.3d 604, 607 (Tex. 2002) (referring to this
balancing of factors as risk-utility analysis). Foreseeability of the risk, however, is
the "foremost and dominant consideration" in the duty analysis. Tex. Home Mgmt.,
89 S.W.3d at 36 (quoting El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex.
1987)); Madison, 241 S.W.3d at 152. 

 3. "Mere Possibility" is Not Reasonable Foreseeability 

 Foreseeability requires that defendant foresee only the general danger; the
plaintiff need not establish that the defendant could foresee the exact sequence of
events that produced the harm. Mellon Mortgage Co. v. Holder, 5 S.W.3d 654, 655
(Tex. 1999); Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); Nixon, 690 S.W.2d
at 551. As stated in the trial court's judgment, foreseeability is not determined by
hindsight, but by what the defendant knew or should have known when the incident
occurred. See Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 757
(Tex. 1998). Thus, the Harrises' having acknowledged, in retrospect, unwise choices
regarding U.N. does not raise a material issue of fact regarding what they knew or
should have known before the assault. See id. 

 Likewise, foreseeability analysis does not consider what simply might occur,
because this inquiry would necessarily give rise to a universal duty to prevent harm,
which the law does not impose. Id. at 756. Accordingly, a two-pronged test
determines foreseeability of injury for purposes of determining the defendant's duty,
as follows: (1) the injury must be of such a general character as might reasonably
have been anticipated and (2) the plaintiff should be so situated with relation to the
wrongful act that injury to him or one similarly situated might reasonably have been
foreseen. (2) Madison, 241 S.W.3d at 152 (citing Mellon Mortgage, 5 S.W.3d at 655;
Nixon, 690 S.W.2d at 551).

 4. Sanders & Madison: Danger Not Reasonably Foreseeable 

 This Court recently applied these principles in Sanders v. Herold and in
Madison v. Williamson. Despite the special relationship between a teenager and his
parents, we held in Sanders that the teenager's parents owed no duty to a child whom
the teenager molested in the parents' home because the parents established as a matter
of law that they were not aware of their son's dangerous tendencies and could not
anticipate the danger that he posed to other children. See Sanders, 217 S.W.3d at
17-19. (3) As in this case, the parents learned about earlier abusive conduct only after
their son had been arrested for the assault on the plaintiffs' child. Id. at 18. Because
the parents had no knowledge of the earlier abusive conduct, even though it had
occurred in their home, the parents could not "reasonably anticipate" their son's
"dangerous tendencies." See id. at 15, 18 (citing and quoting Rodriguez v. Spencer,
902 S.W.2d 37, 42 (Tex. App.--Houston [1st Dist.] 1995, no writ)). As we explained
in Rodriguez, the duty of a parent to protect a third party from injurious acts by the
parent's minor child "depends on whether the injury to the third party is reasonably
foreseeable under the circumstances, as evidenced by the parents' knowledge,
consent, sanction, or participation in the child's activities." 902 S.W.2d at 43. 
Compare Cain v. Cain, 870 S.W.2d 676, 680-81 (Tex. App.--Houston [1st Dist.]
1994, writ denied) (holding that uncle owed duty to niece to prevent sexual assault
by uncle's son-in-law because uncle was aware of son-in-law's guilty plea to offense
of sexual assault of child and could thus reasonably foresee similar assault on niece).

 In Sanders, the Herolds also knew that their son had voyeuristic tendencies
when he was four and five years old and were aware, when he was a teenager, that he
enjoyed the company of younger children and viewed pornography; the Herolds also
conceded that their son "was raised in a household where sexual topics were
frequently discussed in front of the children." Sanders, 217 S.W.3d at 18. Yet, there
was no summary-judgment evidence that the son's voyeurism continued through his
childhood and into his teenage years; that the pornography that he viewed included
child pornography; or that his enjoyment of the company of younger children was
deviant. Id. at 18-19. Because the parents were thus not aware that their son was
dangerous, they had no duty to warn the Sanderses that he was dangerous. Id. at 19.

 Applying the same analysis in the context of a no-evidence summary judgment
rendered pursuant to Rule of Civil Procedure 166a(i), we further held in Madison that
a wife had no duty to prevent her husband from committing a sexual assault against
a minor child in their home. 241 S.W.3d at 153. As in Sanders, there was no
competent summary-judgment evidence that the wife should have foreseen that her
husband would engage in inappropriate sexual contact in their home. See id. 

 In both Sanders and Madison, the defendant family members lacked the
knowledge of prior incidents of criminal behavior on which the supreme court relied
in Texas Home Management. See 89 S.W.3d at 38-39 (holding that owner and
manager of mental health and mental retardation facility could reasonably foresee
danger to family members by facility resident whom facility's interdisciplinary team
permitted unsupervised, out-of-town home visits). Because the facility knew of the
resident's lengthy history of assaults, theft, and weapons violations, the Texas Home
Management court held that the facility failed to establish as a matter of law that it
could not reasonably foresee the danger that the resident would murder a family
member while released from the facility for a home visit. See id. at 36-39 (citing
Greater Houston Transp., 801 S.W.2d at 526). 

C. Duty Analysis in This Case

 In contrast to the demonstrated knowledge of the perpetrator's dangerous
tendencies that supported a duty owed as a matter of law in Texas Home
Management, and much like the comparable lack of knowledge of the perpetrators'
dangerous tendencies shown by the circumstances of the Sanders and Madison cases,
the summary-judgment record of this case does not establish that the Harrises and
Spaulding could reasonably foresee a danger that U.N. would assault A.V. 

 Like the Harrises, Spaulding representatives were incredulous when they
learned about the incident with A.V. The Harrises also expressed disbelief when a
second foster child informed that U.N. had also assaulted her. As a Spaulding
representative reported, though the Harrises had permitted U.N. to be unsupervised
upstairs in the group home, he had gained their trust over the four years that he had
spent as their foster child, to the extent that they were considering adopting him. He
had never acted in a sexually inappropriate manner with anyone, and he did not use
sexually explicit or suggestive language. In short, U.N. had never displayed any
behavior that suggested that he would sexually assault anyone. Likewise, nothing in
his personal history or progress notes suggested a likelihood of his sexually assaulting
A.V. We note further that Dyess confirmed that he was not aware of any evidence
that either the Harrises or Spaulding knew or should have known that U.N. would
commit a sexual assault or that he was dangerous. 

 Under the record presented, we hold that the sexual assault on A.V. was not of
such a general character that the Harrises or Spaulding might reasonably have
anticipated it; we further hold that A.V. was not situated, with relation to the assault
by U.N., in such a way that the Harrises or Spaulding might reasonably have foreseen
that U.N. would sexually assault her or someone similarly situated to her. See Mellon
Mortgage, 5 S.W.3d at 655; Nixon, 690 S.W.2d at 551; Madison, 241 S.W.3d at 152. 
Because neither the Harrises nor Spaulding could reasonably have foreseen the
assault, the trial court properly rendered traditional summary judgment in favor of
them on the ground that they had no duty to prevent U.N.'s sexual assault of A.V.

 We overrule Dyess's issue.

CONCLUSION


 We affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Sharp and Taft. (4)


Justice Sharp, dissenting.
1. In 2002, the 313th District Family Juvenile Court of Harris County, Texas, appointed
Dyess guardian ad litem for A.V. in proceedings brought by the Texas Department of
Family and Protective Services in which Harris County Child Protective Services
obtained custody of A.V.
2. Foreseeability is also a component of the proximate cause element of a negligence
claim. Mellon Mortgage Co. v. Holder, 5 S.W.3d 654, 655-56 (Tex. 1999).
3. Our analysis encompasses Sanders v. Herold, which addressed duty in the context of
the special relationship between parent and child, because the trial court in this case
assumed for purposes of its analysis, but did not decide, that the relationship between
foster parent and foster child was also a special relationship. 
4. Justice Tim Taft, who retired from the First Court of Appeals effective June 1, 2009,
continues to sit by assignment for the disposition of this case, which was submitted
on May 19, 2009.