**Opinion issued August 8, 2019**



In The

# Court of Appeals

### For The

# First District of Texas

—————————————

## NO. 01-18-00733-CV

—————————————

## JESUS GARCIA, Appellant

## V.

## MTZ TRUCKING, INC., Appellee

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Case No. 2015-55326**

---

### MEMORANDUM OPINION

Appellant, Jesus Garcia, challenges the trial court's rendition of summary judgment in favor of appellee, MTZ Trucking, Inc., in his suit for negligent training and supervision and gross negligence. In his sole issue, Garcia contends that the trial court erred in granting MTZ Trucking summary judgment.

We affirm.

## Background

In his second amended petition, Garcia alleges that he was hired by MTZ trucking to "operate dump trucks." On July 3, 2014, while working as an employee of MTZ Trucking, he delivered a load of product to the premises of Perfect Plastic Recycling, Inc., a company "owned, operated, and managed" by Viral Thakkar. On that day, in the course of making his delivery, Garcia's end-dump truck "came into contact with a live power line" on Perfect Plastic's premises. Garcia suffered serious and permanent injuries as a result.

Garcia brought claims against MTZ Trucking for negligent training and supervision and gross negligence.[1] Garcia asserted that MTZ Trucking owed a legal duty to train and supervise its employees, including Garcia; it breached its duty; and its breach proximately caused Garcia's injuries. More specifically, Garcia alleged that MTZ Trucking failed to provide him with training on "the operation of the machinery," that is, an end-dump truck; failed to supervise him "in his work with dump trucks"; and failed to "properly train[] or supervise[] [him] on avoiding electrical wires." Garcia sought damages for past and future physical pain and mental suffering, past and future loss of earning capacity, past and future

---

[1] Garcia also brought claims against Perfect Plastic and Thakkar, who are not parties to this appeal.

2

medical expenses, past and future physical impairment, past and future physical disfigurement, and "exemplary/punitive damages."

MTZ Trucking answered, generally denying Garcia's allegations and asserting defenses. MTZ Trucking then filed a combined no-evidence and matter-of-law motion for summary judgment, attaching exhibits. In the motion, MTZ Trucking asserted that, as a matter of law, it did not owe a duty to train or supervise Garcia "regarding any alleged dangerous condition asserted by [Garcia] on . . . Perfect Plastic's premises." Further, it asserted that Garcia is "a seasoned truck driver with over 33 years of experience," he "had made over 100 deliveries dumping materials for" MTZ Trucking, and he "had driven th[e] exact same end[-]dump truck at least 15 previous times." It therefore allegedly did not owe him a duty to train and supervise him "to pay attention to his surroundings before raising the [end-dump] truck's trailer into power lines." In other words, (1) because Garcia was "experienced in the type of work he was doing" when he was injured, (2) because "MTZ Trucking had no knowledge nor was it required to anticipate the presence of electrical wires" on Perfect Plastic's premises, and (3) because "the dangers incident to electrical power lines are common and obvious to anyone," MTZ Trucking owed "no duty pertaining to the power lines or [Garcia]'s operation of the truck." And because the existence of a legal duty is an essential element of

3

Garcia's claims, MTZ Trucking argued that it was entitled to judgment as a matter of law.

In response to MTZ Trucking's motion, Garcia asserted that MTZ Trucking owed him the common-law duties to "hire, supervise, train, and retain competent employees" and "to adequately hire, train, and supervise [inexperienced] employees." Garcia asserted that he "was not experienced in the work he was assigned[,] which was the unloading of end dumps." Further, according to Garcia, MTZ Trucking had a "duty to train [him] under federal motor carrier safety law." Garcia attached exhibits to his response too.

In reply to Garcia's response, MTZ Trucking argued that it did not owe Garcia a "duty to properly train and supervise an inexperienced employee" because Garcia was not inexperienced. Further, Garcia "fail[ed] to provide sufficient evidence of a duty to train [him] for the specific dangers of overhead electrical wires and the dangers of contact" between an end-dump truck and such wires. According to MTZ Trucking, an employer owes no duty to warn an employee of hazards that are commonly known or already appreciated by the employee. And Garcia also "failed to provide sufficient evidence to establish" that MTZ Trucking had "an additional duty pursuant to" federal motor carrier safety law.

The trial court granted MTZ Trucking summary judgment.

4

## Standard of Review

We review a trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In conducting our review, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference, and resolve any doubts, in the nonmovant's favor. *Id.* If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds is meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request for summary judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c), (i); *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). When a party has sought summary judgment under both standards, we typically review the summary judgment first under the no-evidence standard. *See Merriman*, 407 S.W.3d at 248; *Deweese v. Ocwen Loan Servicing L.L.C.*, No. 01-13-00861-CV, 2014 WL 6998063, at *2 n.1 (Tex. App.—Houston [1st Dist.] Dec. 11, 2014, no pet.) (mem. op.). However, we may review the summary judgment under the matter-of-law standard first if it would be dispositive. *See Deweese*, 2014 WL 6998063, at *2 n.1; *Poag v. Flories*,

317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied); *see also* TEX. R. APP. P. 47.1.

In a matter-of-law summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Once the movant meets its burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

**Summary Judgment**

In his sole issue, Garcia argues that the trial court erred in granting MTZ Trucking summary judgment on his claims for negligent training and supervision and gross negligence because: (1) MTZ Trucking, as a "non-subscriber employer," "ha[d] a legal duty to train or supervise [Garcia] on the specific hazards associated with operating an end dump in the vicinity of overhead electric wires when an injury occurs outside the non-subscriber's premises"; (2) "the hazard of unloading an end dump in the vicinity of electric wires, and the risk of [electric shock] when exiting a cab of the end dump that might be in contact with overhead electrical wires," were not "open and obvious hazards"; and (3) "there is a fact issue for the jury whether the hazards were 'open and obvious.'"

### A. Employee Negligence Suit Against "Non-Subscribing" Employer

Ordinarily, to establish negligence, a plaintiff must establish a duty, a breach of that duty, damages, and that the damages were proximately caused by the breach. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). The "threshold inquiry" is "whether the defendant owes a legal duty to the plaintiff." *Centeq Realty*, 899 S.W.2d at 197. Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.*; *Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476, 480 (Tex. App.—

7

Houston [1st Dist.] 2017, pet. dism'd). We review questions of law de novo. *Advance Tire & Wheels*, 527 S.W.3d at 480.

The Texas Workers' Compensation Act—*see* TEX. LAB. CODE §§ 401.001–419.007—was enacted in response to the needs of employees who, despite escalating industrial accidents, were increasingly being denied recovery for injuries sustained in the course and scope of their employment. *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000); *Dodge*, 187 S.W.3d at 529. The Act allows an injured employee, whose employer subscribes to workers'-compensation insurance, to recover without having to establish the employer's fault and without regard to the employee's own negligence. *See Keng*, 23 S.W.3d at 349. In exchange, the employee receives a lower, but more certain, recovery than would have been possible under the common law. *Id.* at 350.

When, however, an employer opts out of the workers'-compensation system, making it a "non-subscribing" employer, its employees retain their common-law rights. *Id.*; *Dodge*, 187 S.W.3d at 529. In an employee's suit against his or her "non-subscriber" employer, the Act precludes the employer from asserting the defenses "that: (1) the employee was guilty of contributory negligence; (2) the employee assumed the risk of injury or death; or (3) the injury or death was caused by the negligence of a fellow employee." TEX. LAB. CODE § 406.033(a); *see also*

8

*Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 200 (Tex. 2015); *Dodge*, 187 S.W.3d at 529.

Here, the parties agree that MTZ Trucking is a "non-subscribing" employer, making it responsible for its employees' work-related injuries under common-law negligence principles. *See Keng*, 23 S.W.3d at 349–50; *Werner v. Colwell*, 909 S.W.2d 866, 868 (Tex. 1995) ("Because Eastex is a workers' compensation nonsubscriber, Colwell must establish negligence by Eastex in order to recover.").

At common law, employers owe certain nondelegable and continuous duties to their employees who are acting in the course and scope of the employment relationship. *See Keng*, 23 S.W.3d at 349–50; *Dodge*, 187 S.W.3d at 529. These include the duties to warn about the hazards of employment; to supervise activities; to furnish a reasonably safe workplace; to furnish reasonably safe instrumentalities with which to work; and to provide necessary equipment, training, or supervision. *See Elwood*, 197 S.W.3d at 794; *Advance Tire & Wheels*, 527 S.W.3d at 480; *Dodge*, 187 S.W.3d at 529.

However, a "non-subscribing" employer's common-law duties to its employees do not make it an insurer of its employees' safety. *Elwood*, 197 S.W.3d at 794. An employer owes no duty to warn its employee of hazards that are commonly known or already appreciated by the employee. *Jack in the Box, Inc. v.*

9

*Skiles*, 221 S.W.3d 566, 568 (Tex. 2007); *Elwood*, 197 S.W.3d at 794.[2] This rule means, for example, that an employer owes "no duty to warn of 'obvious risks' that are common knowledge" and no "duty to train employees regarding the commonly-known dangers of driving while fatigued." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 412–13 (Tex. 2009).

## B. Duty

In a portion of his sole issue, Garcia argues that the trial court erred in granting MTZ Trucking summary judgment because: (1) MTZ Trucking "has a legal duty to train or supervise [Garcia] on the specific hazards associated with operating an end dump in the vicinity of overheard electric wires," even though Garcia's injury did not occur on MTZ Trucking's premises; (2) "the hazard of unloading an end dump in the vicinity of electric wires, and the risk of [electric shock] when exiting a cab of the end dump that might be in contact with overhead electrical wires" are not "open and obvious hazards"; and (3) a fact issue exists as to "whether the hazards were 'open and obvious.'"

---

[2] We note that, in his appellate brief, Garcia argues that *Jack in the Box* and similar cases "discuss the lack of a duty in a premises[-]liability case when the hazard to be warned against is 'open and obvious.'" According to Garcia, this means that *Jack in the Box* and similar cases "are premises[-]liability cases" that "have no application" to Garcia's claims. We disagree. The rule from *Jack in the Box* and *Elwood* that an employer has no duty to warn its employee of hazards that are commonly known or already appreciated by the employee may be applied to the employee's negligence suit for injuries sustained off of premises owned or controlled by the employer.

10

### 1. Duty Allegations Pleaded

As an initial matter, we address Garcia's purported claim for negligent training and supervision arising out of his "exiting [the] cab of the end dump." Specifically, we look to Garcia's second amended petition to determine whether he alleged, as he now advocates on appeal, that MTZ Trucking had a duty to train or supervise him on "the risk of [electric shock] when exiting a cab of the end dump that might be in contact with overhead electrical wires." *Cf. Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 489–90 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (addressing first "new negligence theory concerning appellees' duty, or lack thereof, as it relates to [plaintiff's] negligence claim," which "was not pled in [plaintiff's] original petition").

"Pleadings, not motions, determine the issues and parameters of a contest." *In re Energy Transfer Fuel, L.P.*, 298 S.W.3d 343, 346 n.2 (Tex. App.—Tyler 2009, orig. proceeding); *accord Alashmawi v. IBP, Inc.*, 65 S.W.3d 162, 171 (Tex. App.—Amarillo 2001, pet. denied); *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 782 (Tex. App.—Texarkana 1996, writ denied) ("[P]leadings . . . frame the issues involved in ruling upon [a] summary judgment motion."); *Jobe v. Lapidus*, 874 S.W.2d 764, 765–66 (Tex. App.—Dallas 1994, writ denied). A pleading setting forth a claim for relief must contain a short statement of the causes of action alleged "sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a).

In determining whether a pleading meets this fair-notice standard, we are to liberally construe the pleading, but, "[e]ven so, a liberal construction does not require a court to read into a petition what is plainly not there." *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018) (internal quotation omitted).

In his second amended petition, Garcia brought claims against MTZ Trucking for negligent training and supervision and gross negligence. Garcia asserted that MTZ Trucking owed a legal duty to train and supervise its employees, including Garcia; MTZ Trucking breached its duty; and MTZ Trucking's breach proximately caused Garcia's injury. Garcia further pleaded:

> [He] was hired by . . . MTZ Trucking to operate dump trucks, and . . . MTZ Trucking failed to provide [Garcia] with training on the operation of the machinery. . . . MTZ Trucking also failed to supervise [him] in his work with dump trucks. [He] was not properly trained or supervised on avoiding electrical wires.

He supported his claims against MTZ Trucking with the following factual allegations:

> On or about July 3, 2014, [Garcia] was transporting material for his employer, . . . MTZ Trucking, on . . . Perfect Plastic['s] . . . premises. . . . Specifically, while [Garcia] was working on . . . Perfect Plastic['s] . . . premises and under . . . Perfect Plastic['s] . . . direction, his [end-dump truck] came into contact with a live power line, causing [his] injuries and damages . . . . There were no warning signs to this area to warn invitees of the dangerous condition nor were there protection barricades to prevent injuries to invitees such as that which occurred to [Garcia]. . . . Defendants negligently caused and negligently permitted such condition to exist and negligently failed to warn [Garcia] of the condition, despite the fact that Defendants knew, or in the exercise of ordinary care, should have known of the

12

existence of the condition and that there was a likelihood of someone being injured as happened to [Garcia]. More specifically, Defendants had actual or constructive knowledge of the condition on the premises and that the condition posed an unreasonable risk of harm. Defendants did not exercise reasonable care to reduce or eliminate the risk, and Defendants' failure to use such care proximately caused [Garcia]'s injuries.

Notably, Garcia does not, in his second amended petition, plead any facts that would have put MTZ Trucking on notice that he was making a claim based on MTZ Trucking's purported duty to train or supervise him not to exit an end-dump truck's cab when the truck has struck, and is in continuing contact with, power lines. *See Bos*, 556 S.W.3d at 306 (court not required to read into petition "what is plainly not there"); *Hand*, 889 S.W.2d at 489–90. Thus, Garcia failed to allege any claim arising out of MTZ Trucking's purported duty to train or supervise Garcia on cab-exiting. Accordingly, we restrict our review of Garcia's negligent supervision and training claims to what is actually contained in his second amended petition— claims arising out of MTZ Trucking's purported duty related to avoiding power lines in the first place while operating the end-dump truck. *See Alashmawi*, 65 S.W.3d at 171 (refusing to consider duty argument advanced on appeal but not contained in pleadings); *Hand*, 889 S.W.2d at 490 ("Thus, the question is whether [defendants] had a duty to purchase the options or take necessary steps to purchase the options because this was the only act of negligence alleged by [plaintiff] in her petition." (internal quotation omitted)).

13

### 2. MTZ Trucking's Duty

MTZ Trucking argued in its motion for summary judgment that it was entitled to summary judgment as a matter of law because it did not owe Garcia a legal duty. MTZ Trucking argued that Garcia is "a seasoned truck driver with over 33 years of experience," he "had made over 100 deliveries dumping materials for" MTZ Trucking, and he "had driven th[e] exact same end[-]dump truck at least 15 previous times." MTZ Trucking therefore contended that it owed Garcia no duty to train and supervise him "to pay attention to his surroundings before raising the [end-dump] truck's trailer into power lines on . . . Perfect Plastic's property while [Garcia was] under . . . Perfect Plastic's direction and control."

Further, according to MTZ Trucking's motion, Garcia was "experienced in the type of work he was doing" when he was injured, MTZ Trucking had "no knowledge nor was it required to anticipate the presence of electrical wires" on Perfect Plastic's premises, and "the dangers incident to electrical power lines are common and obvious to anyone." MTZ Trucking therefore argued that it owed Garcia "no duty pertaining to the power lines or [Garcia]'s operation of the [end-dump] truck" near such power lines. *See Jack in the Box*, 221 S.W.3d at 568 (employer owes no duty to warn its employees of hazards that are commonly known or already appreciated by employee); *Elwood*, 197 S.W.3d at 794 (same).

MTZ Trucking attached to its motion the deposition testimony of Thakkar, an owner of Perfect Plastic. In his deposition, Thakkar testified about another event involving Garcia on Perfect Plastic's premises. The event occurred "[a] few days before" the incident in question. During the earlier event, Garcia was operating an end-dump truck and "dumped product in about the very same area" where he was operating the truck when he was later injured. During the earlier event, Garcia drove his end-dump truck with the trailer up in the air, but Perfect Plastic's "spotter" was present and told Garcia "to stop" because Garcia "almost hit[] the [electrical] wire" with his truck. According to Thakkar, on the day Garcia was injured, the "[s]ame exact thing" happened again—Garcia drove his end-dump truck with the trailer up in the air near the overhead electrical wires. This time, however, Garcia hit the electrical wires with his truck.

MTZ Trucking also attached to its motion the deposition testimony of Garcia. During his deposition, Garcia testified that when he applied for a job with MTZ Trucking, he discussed his "experience as a truck driver" with MTZ Trucking's owner. According to Garcia, he has been a truck driver for thirty-three years. While driving an end-dump truck, he "look[s] around [his] surroundings before [he] move[s] [his] truck in to see if [he] can fit in and what's around [him]." Garcia agreed that "[p]art of [his] job as a truck driver is to know the capacity of [his] truck" and its height and length. Before his injuries, Garcia

15

had successfully operated end-dump trucks, delivering product "many times while working for MTZ [Trucking] without getting hurt." He had practiced operating the end-dump truck's trailer-lifting mechanism several times. He had been on Perfect Plastic's premises before July 3, 2014, "three or four times," driving the same truck that he drove during the July 3, 2014 incident.

Garcia further testified that on the day of the incident, he entered Perfect Plastic's premises and was driving his end-dump truck, but he "didn't see any power lines." He "wasn't looking out for that. . . . [He] was paying attention to the spotter." He "didn't look for" the power lines near his truck, or "just didn't see them," because he "was paying attention to the spotter." And when he later "got out of [his] truck to go to the [truck's] gate to open it up," he "didn't look" for the power lines then either.

During his deposition, Garcia agreed that, "in general" with regard to "abid[ing] by posted speed limits," MTZ Trucking does not have "an obligation to tell [him] that or to teach [him] that or to train [him about] that"—he "already know[s] that." That is because, according to Garcia, it is "common sense" to abide by the speed limit. He contrasted the common sense of abiding by posted speed limits with other, unforeseen events: "Yes. We know that. Things that I've been through already, you know, I should know things. [Things] [t]hat I've never been through, that's where I have the problem."

MTZ Trucking also attached to its motion the deposition testimony of its owner, Angel Martinez. On the topic of training Garcia "how to deal with power lines," Martinez testified that Garcia "could pay attention out there" and that he could "look around . . . [n]ot just for those wires, but he [has] to look around for everything." Further, Martinez explained that when he, a commercially licensed truck driver with two and a half decades of experience, is "driving to a facility to take a load," he is concerned about and "looking out for things like a power line."

MTZ Trucking also attached to its motion the affidavit of Bradley Hubbard, a "transportation and securement specialist in the field of transportation and safety management." Hubbard testified that he has "management, transportation, logistics, safety, and driving experience" and is "a certified trainer in Safety and Compliance." Hubbard testified that he investigated Garcia's incident in order to determine its cause. To do so, he reviewed photographs of the incident's location and Garcia's, Thakkar's, and Martinez's depositions. He also relied on a section of the "Texas Department of Public Safety CDL Handbook" that, according to his affidavit, provides:

> Hitting overhead objects is a danger. Make sure you always have overhead clearance. . . . Before you back into an area, get out and *check for overhanging objects* such as trees, branches, or *electric wires*. It's easy to miss seeing them while you are backing. (Also check for other hazards at the same time.).

(Emphases in original; internal quotations omitted.)

17

Based on his investigation, Hubbard opined that Garcia "had numerous opportunities on the day of the incident to simply look and see the obvious presence of the electrical power lines overhead." He also opined that "Garcia's failure to pay attention to his surroundings[,] despite at least two decades of driving experience and despite the fact [that] he previously even owned his own trucking company[,]" caused his injury. According to Hubbard, "[o]ne of the first things any driver is taught i[s] to make sure he is aware of what is around him." Hubbard opined that Garcia, given his "over twenty years of experience," "should have known this basic safety precaution."

By its motion and the testimony from Thakkar, Garcia, Martinez, and Hubbard, MTZ Trucking carried its summary-judgment burden to conclusively disprove the duty element of Garcia's negligence claims by bringing them within the ambit of the rule that an employer owes its employees no duty to warn of hazards that are commonly known or already appreciated by the employees. *See Jack in the Box*, 221 S.W.3d at 568; *Elwood*, 197 S.W.3d at 794; *Lujan*, 433 S.W.3d at 704. Here, the dangers of operating an end-dump truck with its trailer up in the air near overhead electrical wires would be commonly known to a reasonable person. *See Nabors Drilling, U.S.A.*, 288 S.W.3d at 412–13; *Jack in the Box*, 221 S.W.3d at 568–69; *Elwood*, 197 S.W.3d at 794–95. Accordingly, we hold that MTZ Trucking owed Garcia no duty "to train or supervise [Garcia] on the

18

specific hazards associated with operating an end[-]dump [truck] in the vicinity of overheard electric[al] wires."

To the extent that Garcia argues in his brief that MTZ Trucking, (a) under the Restatement (Second) of Torts, owed him a duty to "exercise reasonable care" for "undertak[ing], gratuitously or for consideration, to render services to another which [it] should recognize as necessary for the protection of the other's person or things"[3] and, (b) under federal motor carrier safety law, duties to "verify that drivers are qualified to operate the commercial vehicle [that] they are to drive to prevent serious harm to the driver and all of us" and to "not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle," Garcia's arguments are unavailing.[4]

Here, the incident that resulted in Garcia's injuries arose from a "hazard[] . . . commonly known or already appreciated by" Garcia. *See Jack in the Box*, 221 S.W.3d at 568; *Elwood*, 197 S.W.3d at 794. When a hazard is commonly known or already appreciated by the employee, the rule relieving an employer of any duty to its employee relating to such a hazard operates as an exception to any other duties that the employer may owe to the employee.

---

[3]  RESTATEMENT (SECOND) OF TORTS § 323 (1965) ("Negligent Performance of Undertaking to Render Services").

[4]  We express no opinion on whether MTZ Trucking owed Garcia these purported duties. Further, we need not address MTZ Trucking's assertion in its brief that Garcia failed to plead that it owed him duties under section 323 of the Restatement (Second) of Torts and federal motor carrier safety law. *See* TEX. R. APP. P. 47.1.

19

Next, in his brief, Garcia asserts that a fact issue exists as to "whether the hazards in this case are open and obvious" and that he presented evidence "that the hazard in question is not open and obvious."

When an appellant must demonstrate the existence of a genuine issue of material fact to defeat summary judgment, the appellant must direct us to the evidence in the record that purportedly creates the fact issue. *See Amboree v. Bonton*, No. 01-14-00846-CV, 2015 WL 4967046, at *7 (Tex. App.—Houston [1st Dist.] Aug. 20, 2015, no pet.) (mem. op.); *Bich Ngoc Nguyen v. Allstate Ins. Co.*, 404 S.W.3d 770, 776 (Tex. App.—Dallas 2013, pet. denied) ("Merely citing generally to voluminous summary judgment evidence in response to either a no-evidence or traditional motion for summary judgment is not sufficient to raise an issue of fact to defeat summary judgment. In the absence of any guidance from the non-movant where the evidence can be found, the trial and appellate courts are not required to sift through voluminous deposition transcriptions in search of evidence to support the non-movant's argument that a fact issue exists." (internal citations and quotation omitted)); *Daniel v. Webb*, 110 S.W.3d 708, 710 (Tex. App.—Amarillo 2003, no pet.) ("It is not our duty to *sua sponte* conceive of potential fact issues and then search the appellate record for evidence supporting their existence."); *Yard v. DaimlerChrysler Corp.*, 44 S.W.3d 238, 243 (Tex. App.—Fort Worth 2001, no pet.).

Here, Garcia's appellate briefs provide no discussion or analysis about his statement that a fact issue exists as to whether hazards in this case were "open and obvious." And he does not direct this Court to any evidence in the record raising his purported fact issue. Accordingly, we need not address Garcia's assertion that a purported fact issue exists as to whether "the hazards in this case were open and obvious."

To sum up, we have held that MTZ Trucking owed Garcia no duty "to train or supervise [Garcia] on the specific hazards associated with operating an end-dump [truck] in the vicinity of overheard electric[al] wires." We therefore conclude that Garcia's claims for negligent training and supervision must fail. *See Jack in the Box*, 221 S.W.3d at 568–69; *Elwood*, 197 S.W.3d at 794–95. And because the negligence claims fail, the gross-negligence claims fail too. *See Sanders v. Herold*, 217 S.W.3d 11, 19–20 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (overruling appellants' issue concerning their gross-negligence claim because court of appeals also held that appellants' negligence claim failed for lack of duty); *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied) ("[O]ne's conduct cannot be grossly negligent without being negligent."). Accordingly, we hold that the trial court did not err in granting MTZ Trucking summary judgment.

We overrule Garcia's sole issue.

21

Due to our disposition, we need not address any of Garcia's remaining arguments in his appellate briefs. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the judgment of the trial court. We dismiss all pending motions as moot.


Julie Countiss
Justice

Panel consists of Justices Lloyd, Landau, and Countiss.