Opinion issued May 15, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00412-CV

———————————

**DAHLIA GISELE MACK, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DE'LINDSEY DWAYNE MACK AND DWIGHT DWAYNE MACK, Appellants**

**V.**

**DELANA CHACHERE, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-25867A**

---

## MEMORANDUM OPINION

De'Lindsey Mack, the son of Dahlia Gisele Mack and Dwight Dwayne Mack, was killed in a shootout near his high school in November 2018. Dave'on Thomas participated in the killing. He has since been criminally convicted and is currently

serving a 50-year sentence for De'Lindsey's murder.[1] De'Lindsey's parents, the Macks, brought wrongful death and survival actions against Delana Chachere, asserting that Chachere, as Thomas's parent, was vicariously liable for Thomas's actions that contributed to De'Lindsey's death. Following a bench trial, the trial court entered a take-nothing judgment.

In their sole issue on appeal, the Macks contend that the evidence is legally and factually insufficient to support the trial court's implied finding that Chachere was not liable for Thomas's acts. We find no evidence that Thomas's actions were foreseeable to Chachere. Thus, we hold that the trial court correctly concluded that Chachere had no duty to control Thomas or warn others about his potential for violence so as to prevent Thomas's criminal acts against De'Lindsey and affirm.

## Background

Shortly after De'Lindsey Mack walked out of Lamar High School the afternoon of November 13, 2018, he was ambushed. Dave'on Thomas and two other young men were in a car that drove up to De'Lindsey and stopped. They jumped out of the car and fatally shot De'Lindsey.

---

[1]     *See Thomas v. State*, No. 01-23-00370-CR, 2024 WL 5126853 (Tex. App.—Houston [1st Dist.] Dec. 17, 2024, pet. ref'd) (mem. op., not designated for publication).

In their live petition, the Macks asserted wrongful death and survival actions against Chachere,[2] alleging that Chachere had a "duty to control" Thomas and "warn of his potential to commit such wrongful acts, because such conduct was foreseeable" and Chachere's negligent acts and omissions proximately caused De'Lindsey's shooting and his resulting physical pain, suffering, mental anguish, and death.

In November 2018, Thomas was 17 years old and living with Chachere and other family members in a home in the Sunnyside area of Houston. He was a student at Jack Yates High School.

Chachere testified at the bench trial that she did not know her son was a gang member or that De'Lindsey was a member of a rival gang until after De'Lindsey was killed. On the day of De'Lindsey's murder, Thomas was "dropped off to school" just like he was every day; Chachere had no idea "if he left school, what happened or none of that." She did not know about the shooting until after she got off work because, as a corrections officer, she wasn't allowed to carry her personal phone while she was working.

Chachere understood that De'Lindsey attended Jack Yates High School until he transferred to Lamar High School for his senior year. While De'Lindsey was at

---

[2] *See* TEX. CIV. PRAC. & REM. CODE §§ 71.011, 71.021.

Jack Yates High School, he and Thomas both played football, but they never "really knew each other" and never "got into it."

Chachere was aware that Thomas had been arrested at school by Houston Independent School District police twice in the fall of 2016. Chachere understood that the first arrest occurred after Thomas "and his baby mama had a disagreement and he pushed her." Thomas was charged with assault but the charge was dismissed. The second arrest also involved the alleged assault of a female student, but Thomas was not charged in that one.

Chachere denied any knowledge of a drive-by shooting that occurred in February 2018 on the street in front of her house. In June 2018, Houston Police Department detectives came to Chachere's home to question Thomas about a drive-by shooting at a Valero gas station. They told Chachere that a suspect had mentioned Thomas's name but did not tell her that Thomas was a suspect. Chachere let the detectives in the house to speak to Thomas but eventually asked the detectives to leave because the detectives kept asking Thomas the same questions trying to get a different answer from him.

Thomas was arrested for De'Lindsey's murder on May 17, 2019. Chachere did not know that he had been charged in two 2018 drive-by shootings until she attended a bond hearing in the State's murder case against Thomas on September

4

11, 2019, where she learned that Thomas had also been charged with aggravated assault.

She testified at the bond hearing that she had never seen Thomas with guns and there were no guns in her house. She knew Thomas had an Instagram account. The State's evidence included direct messages (DMs) sent through Instagram between Thomas and another individual discussing their participation in one of the drive-by shootings, but there was no evidence that Chachere had access to or ever viewed Thomas's DMs.

Chachere stated she did not learn Thomas had been charged with aggravated assault for two drive-by shootings that occurred earlier in 2018 until nearly a year after De'Lindsey's murder. The indictments of Thomas for aggravated assault arising from the February 2018 and June 2018 drive-by shootings show that they were prepared in September 2019.

In its final judgment, the trial court found that, as to the Macks' wrongful death claim, the Macks failed to prove by a preponderance of the evidence that Chachere's acts and omissions proximately caused De'Lindsey's death and thus failed to prove all the elements necessary to support their wrongful death cause of action. As to the Macks' survival claim, the trial court found that the Macks failed to prove by a preponderance of the evidence that Chachere was or should have been aware of the threat posed by Thomas and thus failed to prove all the elements

5

necessary to support a negligence cause of action under a vicarious-liability theory as required to support their survival action.

## Standard of Review

In their sole issue, the Macks argue that the trial court erred in rendering the take-nothing judgment because the evidence was legally and factually insufficient to support the trial court's findings. Because the Macks, as plaintiffs, bore the burden to prove their claims, they must show either that the trial court's findings in support of its judgment are against the great weight and preponderance of the evidence or that the evidence proves their claims as a matter of law. *See Ononiwu v. Eisenbach*, 624 S.W.3d 37, 44 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

When appellants attack the legal sufficiency of an adverse finding on an issue on which they have the burden of proof, they must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). In reviewing a matter-of-law challenge, the appellate court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co.*, 46 S.W.3d at 241. If no evidence supports the finding, we will examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* We will sustain the issue only if the evidence conclusively establishes the contrary proposition. *Id.* at 242.

Appellants challenging the factual sufficiency of the evidence in support of an adverse finding on an issue on which they bore the burden of proof at trial must demonstrate that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to make the finding clearly wrong and unjust. *Ononiwu*, 624 S.W.3d at 44. The court of appeals must consider and weigh all the evidence and may set aside a finding only if it is so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Ononiwu*, 624 S.W.3d at 44. In doing so, the court of appeals must "detail the evidence relevant to the issue" and explain how the contrary evidence greatly outweighs the evidence in support of the finding. *Pool*, 715 S.W.2d at 635.

In an appeal from a bench trial, the trial court's findings of fact "have the same force and effect as a jury verdict." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Thompson v. Smith*, 483 S.W.3d 87, 93 (Tex. App.—Houston [1st Dist.] 2015, no pet.). An appellate court may review them for legal and factual sufficiency under the same standards that we apply in reviewing evidence to support a jury's answer. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Thompson*, 483 S.W.3d at 93.

Here, no findings of fact and conclusions of law were requested and none were filed by the trial court, so we imply all necessary findings to support the trial court's

7

judgment. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). If a reporter's record is part of the appellate record, as it is here, implied findings may be challenged for legal and factual sufficiency in the same way that express findings of fact or jury findings are challenged. *Id.*

In a bench trial, the trial court is the sole judge of the witnesses' credibility and it may choose to believe one witness over another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Woods v. Kenner*, 501 S.W.3d 185, 196 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We may not substitute our judgment for that of the trial court or pass on the credibility of witnesses. *McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 698 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

We review a trial court's conclusions of law de novo and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Arraby Props., LLC v. Brown*, 695 S.W.3d 532, 540 (Tex. App.—Houston [1st Dist.] 2023, pet. denied).

## No Evidence Supports a Finding of Foreseeability

The Macks first challenge the trial court's implied finding that Thomas's prior conduct did not make his future violent conduct foreseeable to Chachere, so

Chachere had no legal duty to control or warn of Thomas's potential for violent conduct. To prevail on a negligence claim, a plaintiff must prove the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Bauer v. Gulshan Enters., Inc.*, 617 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). Duty is the threshold issue in a negligence case. *Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 582–83 (Tex. 2023); *Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 462 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The existence of duty is a question of law for a court to decide from the facts surrounding the occurrence at issue. *Pagayon v. ExxonMobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017). In determining the scope of a defendant's duty, "we weigh 'the risk, foreseeability, and likelihood of injury . . . against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.'" *Mendez*, 671 S.W.3d at 583 (quoting *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 145 (Tex. 2022)). We also consider "whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm." *Id.*

Generally, Texas law imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *Bauer*, 617 S.W.3d at 21. Special relationships include

those existing between an employer and an employee, a parent and a child, and an independent contractor and a contractee. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *Bauer*, 617 S.W.3d at 21.

The Macks assert that Chachere had a duty to control her 17-year-old son. This Court has already addressed the scope of a parent's duty to protect others from the tortious conduct of their minor child. *See Sanders v. Herold*, 217 S.W.3d 11, 14–16, 18–19 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (collecting cases); *Rodriguez v. Spencer*, 902 S.W.2d 37, 41–45 (Tex. App.—Houston [1st Dist.] 1995, no writ). In those cases, we have explained that minors are generally liable for their own torts, and the mere fact of parenthood does not make a parent liable to third parties for a minor child's torts.[3] *Sanders*, 217 S.W.3d at 15; *Rodriguez*, 902 S.W.2d at 42. A parent's duty to protect third parties from a minor child depends on whether the parent knows the child to have dangerous tendencies and either can or reasonably should anticipate the danger the child may pose to third parties. *Sanders*, 217 S.W.3d at 15. Thus, "[a] parent's duty to protect third parties from the acts of the parent's minor child depends on whether the injury to the third party is foreseeable, as

---

[3]     These common-law rules are limited to cases involving personal injury. The legislature has enacted statutory provisions that apply to cases involving damage to property. *See* TEX. FAM. CODE §§ 41.001–41.003.

evidenced by the parent's knowledge of, consent to, or participation in the child's activities." *Id.* (citing *Rodriguez*, 902 S.W.2d at 43).

Here, no evidence shows that at the time De'Lindsey's murder occurred, Chachere knew about any behavior or tendency of Thomas which would raise a fact issue as to whether she reasonably should have foreseen the danger that Thomas might have posed to others. On the day of De'Lindsey's murder, Thomas was "dropped off to school." He had been arrested twice by school police two years before, but there was no evidence that he had ever been expelled from school or referred to juvenile court for delinquency. *See* TEX. FAM. CODE §§ 52.01–52.041; *see also id.* §§ 61.001–61.107 (explaining rights and responsibilities of parents whose children are in juvenile court proceedings). As to the drive-by shootings that Thomas allegedly participated in before DeLindsey's murder, Thomas was not charged for those crimes until after De'Lindsey's murder and Chachere denied having had any knowledge about them before Thomas's 2019 bond hearing.

The Macks are critical of Chachere's lack of knowledge and assert that she should have known about Thomas's criminal activities and would have known about them had she been more involved as a parent. But they cite to no legal authority to support their assertion, and we find no Texas case that extends a parent's duty to control so broadly. *See Rodriguez*, 902 S.W.2d at 43.

11

Because there is no evidence that Thomas's participation in DeLindsey's murder was foreseeable to Chachere, she had no duty to protect De'Lindsey from Thomas's dangerous tendencies. Thus, we hold that the trial court did not err in entering judgment in favor of Chachere.

We overrule the Macks' sole issue.

## Conclusion

We affirm the judgment of the trial court.


Clint Morgan
Justice

Panel consists of Justices Guerra, Caughey, and Morgan.